GEORGE W. COVINGTON AND KATE ELLIS COVINGTON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98283. Promulgated August 21, 1940.

*C. M. Trammell, Esq.*, and *Carl J. Batter, Esq.*, for the petitioners.
*Donald P. Moyers, Esq.*, for the respondent.

OPINION.

ARUNDELL: The respondent has limited to $2,000 for each year the amount of deductible loss sustained by the petitioner in trading in futures contracts. The petitioner claims the losses are deductible in full. He originally included brokers' commissions and excise taxes in the amounts claimed as losses. By amendment to the petition the commissions and taxes are segregated and claimed, respectively, as expense and tax deductions.

The respondent's limitation of the losses to $2,000 is based on his holding that the futures contracts bought and sold by the petitioner were in the nature of capital assets within the meaning of section 117 (b) of the Revenue Act of 1936,[1] and, therefore, were subject to the provisions of section 117 (d) of the Revenue Act of 1936. The petitioner contends that in his trading in futures there was no property "held" by him and there was no sale or exchange of property. It is argued that as there was no delivery of the commodities the petitioner never acquired or held a physical asset; the contracts themselves were not property rights because there was no immediate right to exercise.

The evidence in this case is that the petitioner was obligated under his contracts and the rules of the exchanges to agree to make or take delivery of the commodities. But in practice the petitioner rarely either made or took delivery; in the years before us he did not do so in any instance. He closed out his contracts before delivery date by executing through his brokers "set-off" contracts, that is, contracts to buy or sell commodities in quantities equivalent to those specified in the contracts under which he was then obligated. Set-offs were cleared through the clearing house association of the exchange and the petitioner paid or received the net amount owing by or to him when the contracts were set off against each other.

The exchange rules provide that futures contracts shall be presumed to be made in the form set out in the findings. According to Meyer's Law of Stock Brokers and Stock Exchanges, § 32 (b), contracts in this form are not physically executed, and the only written memoranda actually signed are the "contract slips" exchanged by the brokers. The contract slips confirm the oral contracts made on the floor of the exchange. The contract slips, when signed, constitute binding contracts. Commodity Exchanges, by Baer and Woodruff, p. 77. Using the contract slips as their basis, the brokers make a daily report to the clearing house association of the exchange. Upon the filing and acceptance of the brokers' reports the clearing house assumes responsibility for completion of the contracts and is substituted as seller to all buyers and as buyers to all sellers. Commodity Exchanges, supra, p. 77; Future Trading, by Hoffman, p. 203; Hedging in Grain Futures, United States Department of Agriculture, Circular No. 151, p. 15. The bylaws of the Chicago Board of

---

[1] (b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

Trade Clearing Corporation, as reported in Future Trading, *supra*, are specific on this point in the following provision:

> Buyers and sellers of commodities on change for future delivery may tender their contracts for clearance to the clearing house, and if the clearing house accept the same, the buyer shall be deemed to have bought such commodity from the clearing house, and the seller shall be deemed to have sold such commodity to the clearing house. Such substitution, shall be effective in law for all purposes. The original buyers and sellers shall be released from their obligations to each other, and the clearing house shall be deemed to have succeeded to all the rights, and to have assumed all the obligations of the original parties to such contracts.

So much for the mechanics of handling commodity futures. Considering the petitioner's several arguments, we think that under any view it must be concluded that he held property within the meaning of the statutory definition of capital assets. Some authorities take the view that in dealing in futures the contracts are bought and sold. In Future Trading, *supra*, p. 111, it is said that "in dealing in futures one is dealing not in the actual commodity but in *claims* on or *contracts* for the commodity." Accepting this approach, it would seem to follow that petitioner's losses were capital losses, as contracts are unquestionably property. Another view is that the contract slips evidencing the purchases and sales "constitute bought and sold notes." *Bibb* v. *Allen*, 149 U. S. 481. Under this view the contracts are nothing more nor less than choses in action, and are of course property. Still another view is to treat future dealings as carrying out the original intent to make or take delivery and to ascribe to set-offs the effect of delivery. In *Chicago Board of Trade* v. *Christie Grain & Stock Co.*, 198 U. S. 236, the Court said:

> * * * We must suppose that from the beginning as now, if a member had a contract with another member to buy a certain amount of wheat at a certain time and another to sell the same amount at the same time, it would be deemed unnecessary to exchange warehouse receipts. We must suppose that then as now, a settlement would be made by the payment of differences, after the analogy of a clearing house. This naturally would take place no less that the contracts were made in good faith for actual delivery, since the result of actual delivery would be to leave the parties just where they were before. *Set-off has all the effects of delivery.* * * * [Italics added.]

In *Lyons Milling Co.* v. *Goffe & Carkener*, 46 Fed. (2d) 241, it is said that set-off is "in legal effect a delivery."

It is obvious that if delivery were made it would be in fulfillment of a contract of purchase and sale of property. And if set-off has all the effects of delivery the gain or loss therefrom should, we think, have the same character as a gain or loss from actual delivery.

There is testimony in the record that the petitioner did not actually sign any contracts in his dealings in futures. This we presume was

intended to establish that he had no contracts that were bought and sold. He was, however, represented by his brokers and the contracts they made were his, whether or not he signed them. For reasons given above, we hold that the petitioner's losses from trading in futures were losses incurred in the sale or exchange of capital assets and are limited under the provisions of section 117 (d).

The next question is whether brokers' commissions are deductible. Under the authorities selling commissions paid by one engaged in the trade or business of buying and selling securities are deductible as business expenses, *Neuberger* v. *Commissioner*, 104 Fed. (2d) 649, whereas commissions on purchases are not deductible, *Helvering* v. *Winmill*, 305 U. S. 79.

The commissions paid on commodities transactions differ somewhat from those on securities. On securities transactions a commission is payable on both a purchase and sale. On commodities transactions the commission is not payable upon a purchase or a sale, separately, but only upon the consummation, that is, on delivery of the commodity or upon the closing out by a matching sale or purchase. The evidence is to the effect that had the petitioner initiated a transaction through one broker and closed it out through another he would have had to pay a commission to each. It was the practice to initiate and to close through a single broker, who was paid but one commission.

These differences between securities and commodities transactions are not enough to warrant a different treatment of the commissions. Upon the evidence here it would seem that a part of the commission was paid for the purchase and part for the sale under each contract. The question then is as to the allocation to be made in order to determine the amount deductible as selling commissions. The burden is on the petitioner to show what portion of the total commissions was paid for selling. There is no evidence directly on this point, and perhaps none could be offered because of the fact that the payments were made as lump sums to cover two transactions. Whether the brokers made any division between purchases and sales does not appear. Thus the best that we can do is to make an estimate and in so doing we may properly bear heavily on the petitioner. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. There is nothing to indicate that any more than one-half of brokers' services in any transactions was devoted to sales. Therefore, we hold that one-half, and no more, of the total commissions paid may be deducted as attributable to sales.

The tax deductions conceded by the respondent will be allowed on recomputation.

*Decision will be entered under Rule 50.*