## VALLEY WASTE MILLS v. PAGE et al.
### No. 9555.
Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1940.

Writ of Certiorari Denied Jan. 20, 1941.

See 61 S.Ct. 549, 85 L.Ed. ——.

Marion Smith and Louis Regenstein, Jr., both of Atlanta, Ga., and Hatton Lovejoy, of LaGrange, Ga., for appellant.

Mills Kitchin, Sp. Asst. to Atty. Gen., and T. Hoyt Davis, U. S. Atty., of Macon, Ga., for appellees.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is an action by appellant for the recovery of an alleged overpayment of income taxes for the calendar year 1933. A jury was waived, and the cause submitted to the district court upon the pleadings and an agreed statement of facts. The record discloses a case where, during the taxable year, a corporation sold contracts calling for the future delivery of cotton during that year, and simultaneously purchased contracts calling for later future delivery of the same kind and quantity of cotton. The question presented is whether each of said cotton contracts constituted a closed transaction resulting in a taxable gain or loss to the taxpayer during that year.

It appears from the agreed statement of facts that appellant's board of directors, prior to January 1, 1933, "had ordered that its long position be maintained in the cotton market to the extent of the quantity of cotton represented in the contracts held by it on January 1, 1933," on which date, through brokers, it had bought for future delivery 10,500 bales of cotton.. All such contracts, under rules of the exchanges, provided for delivery in less than twelve months from date of purchase.

The only way, under the rules of each of said exchanges, by which appellant as owner of said cotton could uninterruptedly maintain its long position over a period of time was to sell the contracts calling for future delivery prior to the delivery date thereof, and, simultaneously with said sale, buy contracts calling for the future delivery of a like amount of cotton in a subsequent month. The delivery dates could not be changed, but the appellant was able to, and did, maintain such long position in the cotton market by selling the said cotton contracts prior to their delivery date, and simultaneously purchasing new contracts calling for the same amount of cotton to be delivered in the future. As appellant's long position was thus maintained, the profit or loss resulting from each sale, together with the expenses attending such sale and simultaneous purchases, was reflected on the books of the cotton brokers through whom appellant traded. Whether all or any part of the credit balance could be withdrawn depended on whether and to what extent it was needed to meet margin requirements for the account.

The Treasury Department, in computing the tax liability of appellant for the year 1933, ruled that each time a contract for the delivery of cotton was sold, such sale constituted a closed transaction, and taxable gain or deductible loss resulted therefrom, despite the fact that, simultaneously with such sale, appellant purchased a cotton contract calling for the future delivery of the same kind and quantity of cotton as that just sold. The books of the appellant for the year 1933 also reflected such profit or loss resulting from the sale of each such contract, but appellant did not include in its tax return for this year such profit or loss in determining its federal tax liability. In 1933, there was added to appellant's taxable income by the Treasury Department the amount by which the gains exceeded the losses in this year resulting from the sale of the above described cotton futures contracts. No part of appellant's long position in cotton, as herein stated, was liquidated until subsequent to the year 1933, and then by order of its board of directors.

Appellant had been engaged in buying and selling cotton waste or re-worked cotton. In the year 1933, the board of directors of appellant ordered that its active business be discontinued, except to fulfill contracts which had been made, and in order to dispose of the inventories on hand; and, further, that contracts for future deliveries of cotton be purchased to cover the amounts of waste so sold, and that its buyer's position, so established by the purchases of such cotton futures contracts, be maintained in addition to its buyer's position established by its prior purchases of cotton futures contracts. Pursuant to this action, as waste was sold, contracts for the future delivery of 2100 bales of cotton were purchased in the year 1933, and the extent of its buyer's position established by such purchases was maintained in the manner above stated. The Treasury Department, in the computation of taxable gain or deductible loss for the year involved, treated each sale of a cotton futures contract as a closed transaction in the determination of appellant's income tax liability.

Under the plan, as above stated, followed by appellant, it is agreed that, if the method of treating a cotton contract when the same was sold as a closed transaction resulting in gain or loss was correct, although a like amount of cotton was simultaneously bought for future delivery, then appellant is to take nothing from appellees in this suit. On the contrary, it is agreed that, if the method of computing taxable gain or deductible loss from gross income should be as appellant contends, then appellant is entitled to have the money herein sued for credited or refunded as provided by Sections 321 and 322 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 571.

Although, in the agreed statement of facts, the parties speak of buying or selling cotton contracts, it is apparent from the record that they are merely using trade terms and that what appellant really did was to contract for the purchase or sale of actual cotton for future delivery at so much per pound. All such contracts were expressly entered into subject to the regulations made pursuant to the United States Cotton Futures Act, 26 U.S.C.A. Int.Rev. Code §§ 1920 et seq., 3802, and to the rules of the New York or New Orleans Cotton Exchange. The form of these contracts is set out in the record, and each shows that the seller agreed to deliver to the buyer 50,000 pounds of cotton, in about 100 square bales, at a given price. So, when a member of the trade says that he has bought or sold "a contract," he means that he has bought or sold "a contract lot," that is 50,000 pounds of cotton. This unusual use of the word "contract" results from the fact that all contracts on the New York Cotton Exchange call for 50,000 pounds or multiples thereof.

There is nothing in the agreed statement of facts or in the record to indicate what appellant's "long position" was on January 1, 1933, except that on said date it had bought for future delivery within twelve months 10,500 bales of cotton. A trader is said to be long on the market when he takes the full price risk, gains if the market price goes up, and loses in the event of a decline in the market.

It is appellant's contention that taxable gains or deductible losses from its transactions resulted only when it, in closing out a cotton contract, did not simultaneously purchase another contract for the future delivery of a like amount of cotton; but we cannot accept this view under the facts set forth in the agreed statement. There is no dispute about the profit that was made on these purchases, and the fact that other contracts for the purchase of an equal quantity of cotton of the same grade,

staple, and character were simultaneously made by it is not sufficient to relieve the appellant of the tax upon the profit actually realized upon the contract which was finally closed out during the taxable year.

Appellant argues that the effect of its operations was merely to switch the delivery dates of its future contracts, but we do not so construe the agreed statement of facts; and it is admitted that switching of delivery dates is not permissible under the rules of either of the exchanges on which these sales and purchases were made. Each contract was treated as separate and independent by the parties themselves, doubtless separate commissions were charged for each transaction, and the appellant should not be permitted to combine, for income-tax purposes, that which the parties have elected to make separate and independent for all other purposes.

Section 22(a) of the Revenue Act of 1932, ch. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts page 487, defines gross income as including gains, profits, and income derived from commerce or sales or dealings in property growing out of the ownership or use of or interest in such property, or from the transaction of any business carried on for gain or profit, and income derived from any source whatever. Section 41 of that act, 26 U.S.C.A. Int. Rev.Code § 41, provides that the net income shall be computed upon the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of such taxpayer. Federal income taxes are thus laid upon the gains of a statutory annual accounting period of twelve months. If a taxpayer is in receipt of a net income in one year, it must pay a tax upon that income, although if combined with another year the result would be a loss. Guaranty Trust Co. v. Commissioner, 303 U.S. 493, 58 S.Ct. 673, 82 L.Ed. 975; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Cf. Burnet v. Thompson Oil & G. Co., 283 U.S. 301, 51 S.Ct. 418, 75 L.Ed. 1049; Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; Edward R. Bacon Grain Company v. Reinecke, D.C., 26 F.2d 705; Id., 7 Cir., 54 F.2d 1078; Sachs v. Commissioner, 6 Cir., 111 F.2d 648, which affirmed per curiam, a decision of the Board of Tax Appeals.

In addition, the inclusion of the gains in question in appellant's income tax return for the calendar year 1933 was required by the words of the Revenue Act of 1932, Sec. 112, 47 Stat. 196, 26 U.S.C.A. Int.Rev.Code § 112: "Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section." None of the exceptions fits this case.

For a clear and interesting explanation of the operations of the New York and New Orleans Cotton Exchanges, and other futures or price-insurance markets, see Chapters IX and X of Garside's "Cotton goes to Market," page 130 et seq. The judgment of the district court is affirmed.