**HARRISS v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 6.**

Circuit Court of Appeals, Second Circuit.

June 13, 1944.

Warner Pyne, of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Irving I. Axelrod, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner, Robert M. Harriss, and his deceased wife Abbeline C. Harriss, filed joint tax returns for the years 1933 and 1934. The Tax Court held that there was a deficiency in income taxes on the part of Robert M. Harriss and his deceased wife of $31,759 for the year 1933 and $32,606.83 for the year 1934; and from the order to that effect Robert M. Harriss individually and as administrator of the estate of his wife, who died April 28, 1938, has appealed to this court. We think that the order of the Tax Court was right and should be affirmed.

The taxpayer claims that the Tax Court was in error as to three items involved in his income tax returns.

(1) In holding that a loss of $49,100.41 sustained by the taxpayer in 1933 upon the sale of his interest in a Texas farm was not deductible in full as a loss incurred in the ordinary course of business, but only to the extent of 12½% as a capital loss.

(2) In holding that certain cotton futures transactions resulting in profits to the taxpayer of $36,373.50 in the year 1934 were taxable profits though they were not available as such and could not have been withdrawn in that year or until the year 1935.

(3) In holding that the taxpayer was not entitled to the deduction of a loss of $43,935.22 in the year 1934 sustained on an investment in a parcel of real property at Forest Hills, New York.

Since 1915, with the exception of an interval of two years, taxpayer was a partner in the firm of Harriss & Vose, New York City, engaged in the cotton business, both "spot" and futures. This firm also traded in other commodities. He formerly lived in Oklahoma and Texas and through the years since 1910 has made a number of purchases of improved and unimproved real estate there and in many other parts of the country. Some of these were sold shortly after their purchase, others were held for long periods of time and then sold and others are still owned by petitioner.

In 1920 the taxpayer and his four brothers purchased a farm in LaSalle County, Texas, at a cost of $234,402.15 which they owned in equal shares. Baylis Harriss, one of the brothers, was put in charge of the property. Shortly thereafter the brothers undertook the improvement and development of the tract, clearing part of the land for farming. Tenant houses were built, a commissary store was installed, a church was built and a manager's home erected. Many other improvements to the farm were made and the necessary equipment for its operation was purchased. The cost of all this was borne equally by the five brothers. The operation of the farm did not prove successful and in 1926, on the death of Baylis Harriss, it was leased to others. In 1933 the taxpayer sold his one-fifth interest to one of his brothers for $10,000, sustaining a loss of $49,100.41. Upon finding the above facts the Tax Court decided that the taxpayer's interest in the farm constituted a capital asset and his loss a capital loss and as such allowable only to the extent of 12½%. It is contended on his behalf that it was a loss "incurred in * * * business" and, therefore, deductible in full under Section 23 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 675.

Section 101 (c) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int. Rev.Acts, page 505, defines capital loss and capital assets as follows:

"(2) 'Capital loss' means deductible loss resulting from the sale or exchange of capital assets.

\* \* \* \* \*

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business.. \* \* \*"

■ Because the taxpayer acquired interests in some twenty-one other pieces of real estate in different parts of the country,. between the years 1910 and 1936, completely disposed of ten of them and sold a part of the acreage of three of the remaining tracts, it is argued that he was in the business of buying and selling, rather than of merely investing in real estate. Many of the properties however were held for long periods of time, averaging a holding of about thirteen years in the case of all the properties. In our opinion the Tax Court was fully justified in concluding that these properties were not subjects of active trading, that they were not to be regarded as "held .\* \* \* primarily for sale in the course \* \* \* of business" but, on the contrary, the purchases and sales were capital transactions. In respect to the taxpayer's interest in the Texas farm, with which we are concerned, he held it for about thirteen years before disposing of it and even then sold it to his brother so that it still remained a family investment.. In other words, it was in every fair sense an investment, and not a mere current business activity in dealing in real estate. We think it was rightly held to be a capital asset and the loss finally incurred in liquidating it a loss deductible only as a capital loss. Phipps v. Commissioner, 2 Cir., 54 F.2d 469; United States v. Robinson, 5 Cir., 129 F.2d 297.

Whether property is purchased for sale in the course of business or for investment depends upon the number and the proximity of the purchases and sales to one another. A hope, when a purchase is made, that the property acquired may at some later time be sold at a profit, will not transmute a long time investment in land held by mem-

bers of a family as joint owners into a business of buying and selling real estate, or change a capital transaction into an ordinary business profit or loss.

■ In any event, the question whether the Texas farm was a capital asset was clearly one of fact and the findings of the Tax Court, which were supported by substantial evidence before it, are binding upon us, Dobson v. Commissioner, 321 U. S. 231, 64 S.Ct. 495, and must be affirmed.

The next claim by the taxpayer is that certain transactions in cotton futures found by the Tax Court to have resulted in profits of $36,373.50 in the year 1934 were not assessable as profits during that year inasmuch as under the agreement of the taxpayer and his coadventurers the final liquidation of their transactions in cotton futures did not occur until 1935.

This contention is based on the terms of the agreement between the taxpayer and his associates that their contracts for cotton futures in which the delivery date was to be during the year 1934 were to be succeeded by other contracts for a more distant delivery date in order that their speculations might continue for a longer period. Under the agreement and the custom of the cotton business there was to be a "switch" from one delivery date to another by means of a long sale of the contracts and the concurrent purchase of a similar number of contracts with delivery dates at a later period, the profit, if any, realized through the sale to remain with the broker as a guarantee of credit against the new purchases. As between the parties, the taxpayer and his associates could not withdraw the profits and were obliged to leave them with Harriss & Vose, the brokers who had guaranteed the accounts. The taxpayer testified in respect to these contracts for cotton futures as follows:

"As the delivery dates of these futures approached we had but three choices in accordance with the rules of the Exchange and customs of the business. One was to take delivery of that cotton, another was to liquidate and close out the account, and the third was what we call a switch, a transfer or postpone to a later delivery. That means that we would automatically sell the approaching delivery and buy the same amount and the same contract for deferred or postponed delivery so as to maintain our position in the market and not to sell out accounts and not to liquidate.

For example, if you buy a hundred bales of July cotton, that means about May 25, one month before the option expires, that, according to the contract, you are to take physical delivery of that contract, unless you sell that cotton out, liquidate it, and you still have the third choice.

"Mr. Smith and I transferred them or switched them into more distant delivery, or postponed the delivery of the cotton. As the delivery date approached we would automatically and simultaneously sell the delivery that was approaching and buy a more distant delivery for the same amount, * * *."

■ The taxpayer seeks to have the foregoing arrangements treated as though they involved a mere extension of delivery of the cotton covered by the contracts, where as they in fact involved the actual sale of the contracts for cotton futures that were available in 1934 and a substitution of other contracts. It is clear that the associates in the joint enterprises for buying cotton futures could not by agreement prevent a profit which arose from the liquidation of the old contracts from being "realized" and "recognized" for tax purposes merely because they had stipulated to have the profit used to help finance a new purchase of cotton futures and, for that purpose, to remain as security with the brokers to whom they had guaranteed the accounts. That a taxpayer's proportionate share of profits accruing to a partnership or joint enterprise in which he holds an interest is realized for income tax purposes, irrespective of any contract he may have made, not to have it distributed and to have it employed for other purposes is implicit in the opinion of the Supreme Court relating to the undistributed share of a partner in net earnings, in which Justice Brandeis said: "The tax is * * * imposed upon the partner's proportionate share of the net income of the partnership, and the fact that it may not be currently distributable, whether by agreement of the parties or by operation of law, is not material." Heiner v. Mellon, 304 U.S. 271, 281, 58 S.Ct. 926, 931, 82 L.Ed. 1337.

The decisions in which credits from sales of stock allowed to be used by a broker as margin have been held taxable justify the result reached by the Tax Court in the case at bar. Baker v. Commissioner, 3 Cir., 81 F.2d 741; cf. Webb v. Commissioner, 2 Cir., 67 F.2d 859.

The decision of the Fifth Circuit in Valley Waste Mills v. Page, 5 Cir., 115 F.2d 466, certiorari denied 312 U.S. 681, 61 S.Ct. 549, 85 L.Ed. 1120, is direct authority in support of the view we have taken and cannot be distinguished in principle from the case before us.

■ The taxpayer has sought to prevail by treating the original contracts for future deliveries of cotton as though they were continuing transactions with nothing added to them except an extension of their due dates. But the original contracts were in fact terminated and others substituted as required by the rules of the Exchange and according to the actual conduct of the business. In view of this we must regard the credit item of $36,373.50 as a part of the taxpayer's 1934 income.

■ The taxpayer's contention that he was entitled to claim a deductible loss in his income for 1934 to the amount of $43,935.22 upon his investment in stock of One and Three South William Street Building Corporation at Forest Hills, Long Island, is without merit. He and his brother purchased the property in order to realize a profit through its sale as an apartment site. He personally executed a collateral bond for $75,000 which was borrowed from the Brooklyn Trust Company and secured by a mortgage on the real estate. The brother also executed a collateral bond for $25,000 which was likewise borrowed from the Brooklyn Trust Company under a later loan and secured in the same way. They had equal interests in the stock of the corporation One and Three South William Street Building Corporation, but in 1934 the brother turned over his stock to the taxpayer as a gift after they had offered the mortgagee a deed of the property in payment of its loan which the latter was unwilling to accept. The taxpayer argues that this offer amounted to an abandonment of the premises; nevertheless he afterwards, in 1934, paid taxes and mortgage interest on the site and could hardly have abandoned a property which still remained as security for an indebtedness which he had personally guaranteed. He still had the most vital interest in having it applied by foreclosure or otherwise upon the obligation which he had guaranteed.

We see no basis for the contention that the taxpayer abandoned the premises. He had just obtained a decision from the New York Court of Appeals which freed the site from burdensome building restrictions and continued to pay interest and taxes during the very year in question. There is reason to suppose that the value of the property in 1934 was greater, rather than less, than in prior years. We hold that the deduction was properly disallowed.

For the above reasons the order of the Tax Court is affirmed.