**CORN PRODUCTS REFINING COM-PANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 22809 and 22810.**

United States Court of Appeals Second Circuit.

Argued May 13, 1954.

Decided August 25, 1954.

Jay O. Kramer, Samuel A. McCain, Harry J. Rudick, New York City, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Harry Marselli, Sp. Assts. to the Atty. Gen., for respondent.

Before CHASE, Chief Judge, and HINCKS and HARLAN, Circuit Judges.

CHASE, Circuit Judge.

The petitioner, a New Jersey corporation which has its principal office in the City of New York, is engaged in manufacturing and selling corn products, including sugars, starches, oils and feeds. The Commissioner determined a deficiency of $163,804.78 in its income tax for 1940; a deficiency of $1,520,519.39 in its excess profits tax for 1942; and a deficiency of $14,487.94 in its declared value excess profits tax for that year. The Tax Court upheld the Commissioner and petitions to review its decisions have been consolidated for hearing in this court. The opinion of the Tax Court and its findings of fact as to the issues for 1940 are reported at 16 T.C. 395 and familiarity with them will be assumed. Reference is also made to the unreported opinion and findings of fact of the Tax Court, as to the issues for 1942, in Tax Court Docket No. 22,074.

Four questions are presented as to the tax liability of the petitioner for the years 1940 and 1942. Involving both 1940 and 1942 are questions of the taxability of profits and losses in the purchase and sale of corn futures as ordinary income and loss or as capital gain and loss under Section 117(a) of the Internal Revenue Code, 26 U.S.C.A. § 117(a), and the applicability of Section 118 of the Code; 26 U.S.C.A. § 118, to those transactions. Involving only the tax year 1942, are two questions related to the petitioner's excess profits credit and carry-over.

In its business the petitioner uses large amounts of corn, often as much as 170,000 bushels per day. The maximum amount of raw corn which it could store during the relevant periods was roughly 2,300,000 bushels, only about three weeks supply, so it decided to deal in corn futures in order to insure a stable price for the raw product by thus eliminating price fluctuations caused by occasional supply shortages on the market. The

method adopted was to purchase corn futures through a commodity exchange whenever the price of corn was satisfactorily low and hold them until it could be ascertained whether there would be a crop shortage. Then the futures would be in part liquidated if, and when, need for retaining them ceased because of the condition of the anticipated crop. The method was followed each season.

The petitioner had future sales commitments, but these were mainly of an unfixed character in that the purchaser was given the benefit of the lower of the order price or the delivery date market price. So, with long purchases of futures set against future sales at the order or market price, whichever was lower, the respondent protected itself against commodity price rises but not against declines.

In the years 1940 and 1942 the petitioner's purchases and sales of corn futures resulted respectively in a gain of $680,587.39 and a loss of $109,969.38 and in its tax returns for those years these were treated as items of ordinary income and loss, being entered in petitioner's books as an increase and decrease in cost of goods sold. However, from 1940 to 1946 the Commissioner successfully contended in a series of instances [1] that dealings in commodity futures contracts gave rise to capital, rather than ordinary, gains and losses and in reliance on those cases the petitioner sought to have them treated as capital in nature under Section 117(a) of the Code.

In addition to seeking capital treatment on these items the petitioner also contended that many of the past futures transactions came within the "wash sales" provision of Section 118 which would do away with loss deduction under Section 23(f) and transfer the basis of the "washed" security to the purchased security and, in this case, increase the basis of those futures sold in 1940 and 1942.

The Tax Court held that these commodity transactions gave rise to ordinary income and loss since the petitioner's system of purchasing corn futures "was an integral part of its manufacturing business." It is the position of the petitioner to the contrary that, within the meaning of Section 117(a), commodity futures contracts are "property held by the taxpayer" and do not come within the types of property excluded from the section, not being stock in trade, inventory, property held primarily for sale to customers, or the like, and therefore capital in nature.

In addition to those exclusions specifically provided for in Section 117 the petitioner contends that the courts have set up a "judge-made exception"; that is, that gain and loss from commodity futures transactions will not be given capital treatment when they have been utilized for the commercial purpose known as "hedging." And, even assuming that this "judge-made exception" is proper, it would not be applicable here because the petitioner, so it claims, was not hedging. We think the petitioner has misconstrued the effect both of the cases and of its own dealings.

Hedging is a method of dealing in commodity futures whereby a person or business protects itself against price fluctuations at the time of delivery of the product which it sells or buys. United States v. New York Coffee & Sugar Exchange, 263 U.S. 611, 44 S.Ct. 225, 68 L.Ed. 475. A typical example of hedging occurs when a manufacturer of grain products seeks to stabilize its costs against fixed forward sales prices. Having contracts for the delivery of its grain products to its customers at fixed prices, the manufacturer seeks to set the cost of its related inventory item, grain, by

---

[1]. Covington, 42 B.T.A. 601; affirmed 5 Cir., 120 F.2d 768, certiorari denied 315 U.S. 822, 62 S.Ct. 912, 86 L.Ed. 1219; Tennessee Egg Co., 47 B.T.A. 558; Trenton Cotton Oil Co. v. Commissioner, 6 Cir., 147 F.2d 33; Farmers & Ginners Cotton Oil Co. v. Commissioner, 5 Cir., 120 F.2d 772, reversing 41 B.T.A. 1083; Makransky's Estate v. C. I. R., 5 T.C. 397, affirmed 3 Cir., 154 F.2d 59.

entering into futures contracts for the purchase of it. By so doing the manufacturer may later obtain the necessary grain at a price properly related to the already fixed selling price of his manufactured product and, so far as commodity costs are concerned, the profit from manufacturing is insured.

In United States v. New York Coffee & Sugar Exchange, supra, the Supreme Court set forth three general classifications of dealings in commodity futures: speculation, legitimate capital transactions, and hedging. These classifications have since been adopted as convenient nominal guides by the courts to determine the proper tax consequences of futures transactions.[2] Where futures are dealt with for the purposes of speculation or what is called legitimate capital transactions, they obviously fall outside the possibly relevant exclusions of Section 117(a). In the hedge, however, the property is used in such a manner as to come within the exclusions, for it is a part of the inventory purchase system which is utilized solely for the purpose of stabilizing inventory cost. It is an integral part of the productive process in which the property is held not for investment but for the protection of profit with the intent of disposition when that purpose has been achieved. As such it cannot reasonably be separated from the inventory items and the cost (or profit) from such operations would necessarily be entered in the books of account of the business as part of cost of goods sold. The tax treatment of hedges, then, is not a "judge-made exception" to Section 117 (a); it is simply a recognition by the courts that property used in hedging transactions properly comes within the exclusions of the section.

■ The futures transactions of this petitioner, it is true, did not constitute what is known as "true" hedging. The true hedge can occur only when forward sales prices are fixed and the relation between commodity purchase and later sales price is insured against both increase and decrease of commodity prices. As the forward sales prices here were based mainly on the lower of order or market prices, the petitioner was protected only against increases in commodity prices and did not have the complete insurance of the true hedge. But this is a distinction presently of no significance. The property here was used for essentially the same purpose and in the same manner as in true hedging. Futures contracts were entered into to stabilize inventory costs and thus protect profit, and whether complete or only partial insurance was thereby obtained is simply a difference in degree, not in kind. Therefore, for the same reasons that the true hedge is not accorded capital treatment under Section 117(a), the kind of transactions with which we are now concerned are not to be regarded as capital ones either.

■ The petitioner's further contention that the wash sales provision of Section 118 is applicable to its futures transactions rests on Trenton Cotton Oil Company v. Commissioner, 6 Cir., 147 F.2d 33, rehearing denied 148 F.2d 208. With deference, however, we find ourselves unable to agree with that decision. Cf. Harriss v. Commissioner, 2 Cir., 143 F.2d 279; Valley Waste Mills v. Page, 5 Cir., 115 F.2d 466, certiorari denied 312 U.S. 681, 61 S.Ct. 549, 85 L.Ed. 1120.

Disallowance of loss deduction under Section 118 occurs only on the sale and purchase of "shares of stock or securities," and only if the stocks or securities purchased are "substantially identical" with those sold. The transactions here are distinguishable on both grounds, for reasons well stated in the opinion below. On the question of substantial identity the Tax Court said: "Furthermore, a new future commodity contract is not 'substantially identical' with any prior contract even though the quantity involved in each is identical. It would be purely accidental if the new contract was with the same party as the one who had agreed to sell the commodity in the

---

2. See cases cited in footnote 1.

earlier contract. The price would probably be different and the delivery date would certainly be different." And on the question of whether commodity futures contracts are securities: "it is apparent from the opinion, Valley Waste Mills v. Page, [5 Cir.,] 115 F.2d 466, cert[iorari] denied, 312 U.S. 681 [61 S.Ct. 549, 85 L.Ed. 1120], that such a future is not a security in any generally recognized sense but simply a contract between two parties in which one agrees to supply at a designated time in the future a stated quantity and quality of goods, upon payment of a stated price and on which a part of the contract price, called a margin, has been paid by the buyer to his broker to bind him until the sale is consummated or the contract is sold * * *" We are in accord and take the above as the correct analysis and disposition of this point.

The third point raised by the petitioner is that the Tax Court erred in not holding that dividends declared by certain foreign corporations and payable to petitioner in 1939 were includible in its income for 1939. The effect of the inclusion of those amounts in 1939 income would be to increase petitioner's excess profits credit and its unused excess profits carry over to the year 1942, and thereby reduce the 1942 excess profits tax.

In 1938 a Brazilian corporation, wholly owned by petitioner, declared a dividend of 2,175,000 Brazilian milreis, payable in 1939. In 1939 four Italian corporations in which the petitioner was a major stockholder declared and made payable to petitioner dividends totalling 4,496,327 lire. These dividends were, however, payable only in blocked currency. Consistent with its practice of treating blocked foreign dividends as income only when actually received in the United States in dollars, the petitioner entered these dividends on its books of account as deferred income and did not report them as income in 1939 for tax purposes.

In order to prove that the foreign dividends should have been included in 1939 income, it was necessary to show that instead of being blocked the dividends were in fact freely convertible into dollars. The petitioner offered as such proof the fact that in 1939 it had converted 100,649.9 milreis and 410,000 lire into dollars. There was no showing of the manner of conversion. The Tax Court held that this evidence was not sufficient to discharge the petitioner's burden of proof and accordingly held that the foreign dividends were not includible in 1939 income.

■ The petitioner insists that the Tax Court erred both in putting the burden of proof on the petitioner and in not holding its evidence of conversion of some milreis and lire into dollars to be sufficient proof of free convertibility. As to the burden of proof it is so well settled as not to need much comment that in proceedings before the Tax Court the petitioner must *affirmatively* establish its case. Edmond Weil, Inc., v. Commissioner, 2 Cir., 150 F.2d 950, 952, on which the petitioner relies for the proposition is not in conflict with the general rule but recognizes expressly that, "The burden was upon the taxpayer to establish that the assessment of gain could not be made upon the basis of current exchange."

■ Rule 32 of the Rules of Practice before the Tax Court, 26 U.S.C.A. § 1111, provides: "The burden of proof shall be upon the petitioner, except as otherwise provided by statute, and except that in respect of any new matter pleaded in his answer, it shall be upon the respondent." The issue of convertibility is not the subject of other legislation shifting the normal burden and here the issue was not new matter pleaded in the respondent's answer. Accordingly, the exceptions are inapplicable and the burden of proof was properly placed on the petitioner.

■ The evidence amply supports the Tax Court's conclusion that the petitioner failed to prove free convertibility. Only small portions of the dividends were converted into dollars, and the manner

of conversion was not even shown. The entire remainder of the dividends was treated as deferred income. Such a showing, far from being adequate proof of free convertibility, tended to suggest the lack of it.

The final point raised by the petitioner is concerned with a determination with respect to abnormal income under Section 721 of the Code. But Section 732(c), which provides that any determinations made solely by reason of Section 721 of the Code are final and "shall not be reviewed or redetermined by any court * * *" deprives us of jurisdiction to review this determination. George Kemp Real Estate Co. v. Commissioner, 2 Cir., 182 F. 847, certiorari denied 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624; James F. Waters, Inc., v. Commissioner, 9 Cir., 160 F.2d 596, certiorari denied 332 U.S. 767, 68 S.Ct. 77, 92 L.Ed. 353.

Decision affirmed except as to the final point and as to that the petition is dismissed for lack of jurisdiction.