ALBERT KURTIN AND PATRICIA BRISTOL KURTIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51666.   Filed August 30, 1956.

*Bernard Weiss, Esq.*, for the petitioners.
*A. Jesse Duke, Jr., Esq.*, for the respondent.

**OPINION.**

OPPER, *Judge:* That the butter futures contracts closed out by petitioner at a loss were hedges within the meaning of G. C. M. 17322 [1] and the cases applying it seems to us inescapable both as a factual and as a legal conclusion. The commitment as to which petitioner sought to insure himself against loss was his purchase of certain types of cheese for future delivery. His agreements with the producers required him several months later to accept the product at the previously stipulated price.

The uncontradicted testimony was that there is no futures market for cheese but that the price of cheese, being dependent on butterfat, normally fluctuates with that of butter as to which the sale of futures is available. Under ordinary circumstances petitioner could hence look forward to recovering on closing out the futures transactions at least a part of the loss occasioned by any decline in cheese prices between the date of commitment and the time of delivery. This was as appropriate a hedge as was available to petitioner.

It is true that petitioner's agreements with the cheese producers were not formal written contracts. But he testified without contra-

---

[1] XV–2 C. B. 151 (1936).

diction that they were binding upon the parties and were so treated. It is also true that due to unusual circumstances the price of cheese declined and that of butter rose. The result to petitioner was that the insurance he sought did not materialize. But we think that circumstance along with the other facts no more deprives this arrangement of its qualities as an attempted hedging operation than would the fortuitous ineffectiveness of an insurance policy prevent premiums paid from being treated as expended for insurance purposes.

We have been referred to no case where on similar facts the benefit of deduction as a loss on a hedging transaction was denied. The cases relied on by respondent are clearly distinguishable. Thus in *Trenton Cotton Oil Co.* v. *Commissioner*, (C. A. 6) 147 F. 2d 33, for example, the court says:

> The real question here is whether petitioner's contracts for the purchase of refined oil futures were made to protect it against loss on the purchases of cottonseed or on the sale of crude oil for future delivery.
>
> The Tax Court found as a fact that petitioner's purchases were not for that purpose. This finding is supported by substantial evidence.

Here on the contrary we have found as a fact from ample evidence that petitioner sold the butter futures to protect himself against loss on the sale of the cheese, to the purchase of which at a fixed price he was already committed.

In *Corn Products Refining Co.* v. *Commissioner*, 350 U. S. 46, affirming on this point (C. A. 2) 215 F. 2d 513, which in turn affirmed a Memorandum Opinion of the Tax Court, the taxpayer which was in the business of manufacturing products out of raw corn, "At harvest time each year * * * would buy [corn] futures when the price appeared favorable. * * * If shortages appeared * * * it sold futures only as it bought spot corn for grinding. In this manner it reached a balanced position with reference to any increase in spot corn prices. It made no effort to protect itself against a decline in prices." The Court concludes: "it appears that the transactions were vitally important to the company's business as a form of insurance against increases in the price of raw corn. * * * "

As respondent correctly states:

> This Court has said that whether futures activities in a particular case were for speculation or for hedging is "largely a factual question." * * * Hedging transactions in commodities "may take several different forms depending upon the particular circumstances in which the hedger finds himself and the type of risk which he seeks to avoid." * * *

In discussing the *Corn Products* case respondent in effect maintains that petitioner cannot succeed unless it is "shown that petitioner's transactions in butter futures were entered into to provide price risk

insurance through hedging." [2] Our interpretation of the present facts is that petitioner has been shown to have done just that and we have so found. On the principle of the *Corn Products* case and on the present record petitioner's sale of butter futures was undertaken in an effort to protect himself against a decline in cheese prices which would normally be accompanied by a decline in butter prices. As in *Corn Products Refining Co.* v. *Commissioner, supra*, we conclude that this was an integral part of petitioner's business operations and should be allowed as an ordinary business item and not merely as a capital loss. *Fulton Bag & Cotton Mills*, 22 T. C. 1044; *Stewart Silk Corporation*, 9 T. C. 174.

*Decision will be entered under Rule 50.*

---

[2] He further says: "The very definition of hedging itself and, in fact, the only manner in which futures transactions could constitute a hedge and assure any degree of price risk insurance in the instant case, contemplates an opposite position in futures market from that held in actuals and the closing out of such positions simultaneously so that loss on the one side will be offset by gain on the other."