FLOYD EUGENE SWARTZ, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Swartz v. Commissioner
Docket No. 10537-86.
United States Tax Court
T.C. Memo 1987-582; 1987 Tax Ct. Memo LEXIS 585; 54 T.C.M. (CCH) 1153; T.C.M. (RIA) 87582; November 24, 1987. Floyd Eugene Swartz, Jr., pro se. Dale P. Kensinger, for respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Year
Deficiency [1]
1979
$ 3,748.20
1980
1,892.00
1982
1,353.00
*586 After concessions, see note 1, the sole issue is the character of losses incurred by petitioner in trading gold and silver commodity futures contracts. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner resided in Kansas City, Missouri, at the time the petition in this case was filed. From December of 1980 through December of 1983, petitioner bought and sold gold and silver commodity futures contracts. [2] Petitioner bought and sold all commodity futures contracts through Merrill Lynch Commodities, Inc. (formerly Merrill, Lynch, Pierce, Fenner, and Smith, Inc., and hereinafter "Merrill Lynch") and Prudential-Bache (formerly Bache). Petitioner never bought or sold a commodity futures contract directly from or to another person or entity for a fee or commission. He has never been a member of any commodities exchange, nor has he ever been employed by a commodities exchange or brokerage house. Petitioner could make a profit from his dealings in commodity futures contracts only if he correctly predicted the price fluctuation of gold and silver. *587 He did not utilize commodity futures contracts as hedges and he never took or made delivery of the actual commodity, rather he closed each futures contract with an offsetting contract. Petitioner devoted his full time effort to trading commodity futures contracts and was not otherwise employed. *588 Petitioner incurred losses from his transactions in commodity futures contracts in the amounts of $ 45,917, $ 25,843, and $ 19,400 during 1981, 1982, 1983. Petitioner deducted his 1983 and 1982 losses as ordinary losses, completely eliminating his tax liability for such years and creating net operating losses ("NOL"). Petitioner carried back his 1983 NOL to 1980, completely eliminating his 1980 income tax liability of $ 1,892 and giving rise to a refund of $ 1,892, plus interest. Petitioner carried back his 1982 NOL to 1979, reducing his 1979 income tax liability by $ 3,748.20 and giving rise to a refund of $ 3,748.20, plus interest. [3] Petitioner's 1981 taxable year is not before the Court and there is not evidence as to how petitioner treated his 1981 loss. *589 Respondent concluded that petitioner's 1983 and 1982 losses were capital, not ordinary, losses and determined deficiencies as hereinabove indicated. OPINION The issue is the character of losses incurred by petitioner in trading gold and silver commodity futures contracts. Petitioner contends that the losses were ordinary losses and respondent contends that the losses were capital losses. Characterization of a loss as a capital loss requires the presence of two elements: (1) a sale or exchange (2) of a capital asset. Petitioner effectively conceded that the sale or exchange element is here present. Cf. Vickers v. Commissioner,80 T.C. 394 (1983). Thus, our focus is on whether the commodity contracts were capital assets. This Court has on several occasions held that commodity contracts are capital assets. See Vickers v. Commissioner, supra;Muldrow v. Commissioner,38 T.C. 907 (1962); Battelle v. Commissioner,47 B.T.A. 117 (1942); *590 Covington v. Commissioner,42 B.T.A. 601 (1940), affd. on this issue 120 F.2d 768 (5th Cir. 1941). [4] Other courts have also held that commodity contracts are capital assets. See Oringderff v. Commissioner, an unreported case, 48 AFTR 2d 81-5908, 81-2 USTC par. 9642 (10th Cir. 1981), affg. T.C. Memo. 1979-93; United States v. Rogers,286 F.2d 277 (6th Cir. 1961); Faroll v. Jarecki,231 F.2d 281 (7th Cir. 1956); Commissioner v. Farmers & Ginners Cotton Oil Co.,120 F.2d 772 (5th Cir. 1941), revg. on other grounds 41 B.T.A. (1940). Petitioner attempts to avoid the application of the above-cited cases under two theories. Petitioner's first argument is that the commodity contracts are not capital assets within the meaning of section 1221. The burden of proof is on petitioner with respect to this issue. Welch v. Helvering,290 U.S. 111 (1933); *591 Rule 142(a). Section 1221 defines capital assets as all property, excepting, inter alia, "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." (Emphasis added.) Sec. 1221(1). Petitioner argues specifically that he held the commodity contracts for sale to customers in the ordinary course of his trade or business of buying and selling commodity contracts and, accordingly, the commodity contracts are not capital assets. We reject petitioner's first argument. All of petitioner's commodity contract trades were made through Merrill Lynch or Prudential-Bache. Merrill Lynch and Prudential-Bache were not petitioner's customers, but rather petitioner was one of their customers. Petitioner does not argue otherwise. Petitioner would have us look through Merrill Lynch and Prudential-Bache to the nameless members of the commodity markets who ultimately purchased the commodity contracts petitioner sold and sold the commodity contracts petitioner purchased. Even were we to so look through Merrill Lynch and Prudential-Bache, petitioner would *592 fare no better, as members of an organized exchange who buy and sell securities from a taxpayer are not the taxpayer's "customers" within the meaning of section 1221(1). See Faroll v. Jarecki,231 F.2d 281, 287 (7th Cir. 1956); Kemon v. Commissioner,16 T.C. 1026, 1032 (1951). Accordingly, we hold that petitioner's commodity contracts do not qualify for the section 1221(1) exception to the definition of capital assets because petitioner has no "customers." [5]
*593 Petitioner's second argument is that under the Corn Products doctrine, [6] his losses are not capital losses. Petitioner bears the burden of proof on this issue. Welch v. Helvering, supra; Rule 142(a). We hold that the Corn Products doctrine is not here applicable because petitioner had a substantial investment motive in the commodity contracts he purchased. See W. W. Windle Co. v. Commissioner,65 T.C. 694 (1976). [7]
*594 To reflect the foregoing and concessions by the parties, Decision will be entered for the respondent.
Footnotes
1. Respondent also determined and later conceded additions to petitioner's Federal income tax pursuant to section 6653(a) for the 1979 and 1980 taxable years and pursuant to sections 6653(a)(1) and (2) for the 1982 taxable year. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Commodity futures contracts were described in Moody v. Commissioner,T.C. Memo. 1985-20, as follows: A commodity futures contract is an executory contract representing a commitment to deliver or to receive a specified quantity and grade of a commodity during a specified month in the future with the price being designated by the trading participants. Futures contracts are standardized as to the quantity of the commodity, the location, the time of delivery of the commodity and the grade or standards that are acceptable for delivery. In the United States, futures contracts are traded on an organized and federally regulated commodity exchange. The two parties to a futures contract are the seller and the buyer. The seller takes a short position and the buyer takes a long position. Futures contracts are satisfied only by delivery or offset. An offset occurs when a trader executes an equal and opposite position to an earlier position, which eliminates the position in the market. For example, a seller would offset a short position in a given commodity by entering into a long position in the same commodity for the same number of contracts and for the same delivery month. Futures contracts cannot be disposed of in a secondary market, unlike the underlying commodity. Therefore, most are terminated by offset prior to delivery with only a small percentage, 1 to 3 percent, being satisfied by actual delivery. ↩
3. During the 1979 and 1980 taxable years, petitioner received wage and salary income in the amounts of $ 35,548 and $ 21,995, respectively. During the 1982 taxable year, petitioner received no wage and salary income. During each of the years at issue, petitioner reported interest and dividend income ranging from $ 2,929 in 1979 to $ 3,429 in 1982 and wage and salary income earned by his spouse ranging from $ 1,610 in 1979 to $ 15,124 in 1982. ↩
4. See also Buehler v. Commissioner,T.C. Memo. 1987-416; Kozikowski v. Commissioner,T.C. Memo. 1986-364; and Huebschman v. Commissioner,T.C. Memo. 1980-537↩. 5. Petitioner strenuously argues that he was in the trade or business of trading commodity futures contracts and for this reason his losses are not capital. Respondent, on brief, conceded that petitioner was engaged in the trade or business of trading commodity futures contracts but argued that being so engaged is irrelevant to the characterization of petitioner's losses. We agree. The definition of capital assets in section 1221 is specifically not contingent upon "whether or not [the asset is] connected with [a taxpayer's] trade or business." Sec. 1221. That petitioner may have been engaged in the trade or business of trading commodity contracts could well be relevant for other purposes, see sec. 162, but it is not relevant for determining the character of petitioner's losses, see sec. 1221↩. 6. See Corn Products Refining Co. v. Commissioner,350 U.S. 46↩ (1955), and its progeny. 7. This case is appealable to the Eighth Circuit Court of Appeals. The Eighth Circuit in Arkansas Best Corp. v. Commissioner,800 F.2d 215 (8th Cir. 1986), revg. in part and affg. in part 83 T.C. 640 (1984), cert. granted    U.S.    (March 23, 1987), recently purported to limit the Corn Products doctrine, which it described as "misbegotten," to its facts. The Eighth Circuit stated, "[w]e believe that the judiciary lacks authority to create exceptions to section 1221 that Congress did not choose to make." 800 F.2d at 221. Since the result reached under our analysis of the Corn Products doctrine is the same as the result which would be reached under the Eight Circuit's analysis of that doctrine, we are not compelled to and do not apply Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). See Meyers v. Commissioner,T.C. Memo. 1986-518↩.