O. L. BURNETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90248.   Promulgated September 29, 1939.

*Paul McMahon, Esq.,* for the petitioner.
*Carroll Walker, Esq.,* and *Elizabeth B. Fegan, Esq.,* for the respondent.

### OPINION.

BLACK: This proceeding is to contest a deficiency of $4,901.40 in petitioner's income tax liability for the year 1934. The deficiency results from several adjustments made by the Commissioner in the income tax return filed by petitioner for that year. Petitioner contests only three of these adjustments by appropriate assignment of error, as follows:

(1) That the Commissioner erred in disallowing as a deduction a loss of $18,964.21 which petitioner incurred in a business regularly carried on by her and in holding that petitioner was not engaged in any trade or business and that the loss in question was a capital loss and limited to $2,000 by the provisions of section 117 (d) of the Revenue Act of 1934.

(2) That the Commissioner erred in disallowing as a deduction $9,600 paid out as attorneys' fees during the taxable year for securing a refund of income taxes erroneously paid.

(3) That the Commissioner erred in disallowing a deduction of $15,420 claimed by petitioner as a loss resulting from her investment in 60 shares of stock in the First National Bank of Burkburnett, Texas, becoming worthless during the year 1934.

The facts have all been stipulated and we adopt the stipulation as our findings of fact and shall state herein only such facts as we deem necessary to an understanding of the issues to be decided.

We shall first take up issue (1). It has been stipulated that during the taxable year 1934, the petitioner sustained a loss of $18,964.21 in the purchase and sale of stocks and commodities. Petitioner claimed this loss on her income tax return for 1934 as an ordinary loss, deductible in full from her income in that year. In his deficiency notice the Commissioner limited this loss to $2,000 and gave the following reason therefor:

The amount claimed as a business loss from trading in stocks and commodities has been disallowed as a loss from business, and the limited amount of $2,000 allowable under section 117 (d) of the Revenue Act of 1934 has been allowed

as a capital net loss. The agent's investigations covering 1934 and prior years have indicated that your method of conducting your trading transactions is not such as would entitle you to be classed as carrying on a business.

The facts with reference to petitioner's trading on margin through brokers in corporate stocks and in wheat and cotton, during the year 1934, have been stipulated in great detail. It is not necessary to incorporate these details in this report. Suffice it to say that the stipulation shows that during the taxable year 1934 the activities of the petitioner in the purchase and sale of stocks and commodities on margin compares with the annual average of her like activities during the 10-year period ended December 31, 1936, as follows:

| Items | Taxable year 1934 | 10-year averages |
|---|---|---|
| Number of contracts | 646 | 584 |
| Property values | $3,830,036.15 | $10,831,466.07 |

It seems manifest from the facts which have been stipulated that during the taxable year and several years prior thereto petitioner was engaged in the business of trader in securities and commodities on her own account and we so find. Her business consisted of buying and selling stocks and commodities on her own account, primarily for the profit to be derived from selling for a price in excess of the cost of the stocks and commodities to her. Therefore, if deciding that petitioner was a trader in stocks and commodities on her own account during 1934 and that the stocks and commodities held in her margin accounts were held primarily for sale in her business were all that is necessary, we would decide issue (1) for petitioner. Such would have been sufficient under the Revenue Act of 1932 and the loss which petitioner incurred in these trading accounts would have been an ordinary loss and deductible in full. Cf. *Charles Wesley Purdy*, 36 B. T. A. 572; affd., 102 Fed. (2d) 331, decided under the 1932 Act. Petitioner cites the *Purdy* case and several "G. C. M's" and "I. T's" in support of her contention. These were all under revenue acts prior to the Revenue Act of 1934 and seem to be of no particular value here in view of the changes made by the 1934 Act, to which we shall refer in more detail presently.

In the 1934 Act the definition of "capital assets" was changed so as to drop the requirement that the property should have been held for more than two years and to narrow the provision that capital assets should not include "property held by the taxpayer primarily for sale in the course of his business" to a provision that capital assets shall not include "property held by the taxpayer primarily for sale *to customers* in *the ordinary course of* his trade or business." (Italics ours.) The words in italics are those which were added in the Revenue Act of 1934.

Section 117 (b) of the Revenue Act of 1934 reads as follows:

(b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

Under the above definition any property is a "capital asset" unless it may properly be included in an inventory or is held for sale to customers. Petitioner being a trader in securities and commodities for her own account, as distinguished from a "dealer" in securities and commodities, was not entitled to use inventories in determining her net income. Cf. *Edward J. White*, 37 B. T. A. 1106; *C. E. Wilson*, 29 B. T. A. 1022; affd., 76 Fed. (2d) 476; *Adirondack Securities Corporation*, 23 B. T. A. 61.

It being clear that petitioner is not one who is entitled to use inventories in determining her net income, we next inquire whether the stocks and commodities purchased and sold by petitioner through brokers for her own account in 1934 constituted property held by the taxpayer primarily for sale to customers in the ordinary course of her trade or business.

The Board has held that a taxpayer who trades for his own account does not sell to "customers." *Oil Shares, Inc.*, 29 B. T. A. 664. It seems plain that the very purpose of the change in the Revenue Act of 1934 defining "capital assets" to which we have just referred was to see to it that the limitation on deductible capital losses provided by section 117 (d) should apply to speculative traders who purchase and sell securities and commodities for their own account and not for resale to customers.

Under the Revenue Act of 1932 the definition of "capital assets" was as follows:

Sec. 101 (c) (8). "Capital assets" means property held by the taxpayer for more than two years * * * but does not include * * * property held by the taxpayer primarily for sale in the course of his trade or business.

In the Revenue Act of 1934 this definition was changed in the manner we have already indicated. The reason for the changes made is shown in the report of the Senate Finance Committee and in the conference report of the two houses. The remarks of the Senate Finance Committee regarding the matter are found at page 12 of the report, and in part are as follows:

Second, the definition of capital assets has been slightly revised to prevent tax avoidance by excluding from the category of a capital asset "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business", instead of merely "property held by the taxpayer primarily for sale in the course of his trade or business."

The observations by the committee on conference are found in its report at page 22, being in part as follows:

Amendment no. 66: The house bill excluded from the definition of "capital assets" property held primarily for sale in the course of taxpayer's trade or business. The Senate amendment confines the exclusion to property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business, thus making it impossible to contend that a stock speculator trading on his own account is not subject to the provisions of section 117. The House recedes.

Much of petitioner's brief is devoted to argument to show that during 1934 she was engaged in the business of buying and selling securities and commodities for her own account and that all her purchases were primarily for sale in the course of her business. We think these contentions are borne out by the stipulated facts, and, as we have already said, if the 1934 Act on this point were the same as the 1932 Act, petitioner would prevail, but the acts are not the same. Petitioner's stocks and commodities held in her margin accounts with brokers were not held primarily for sale "to customers in the ordinary course" of the taxpayer's trade or business within the meaning of the Revenue Act of 1934. We, therefore, hold against petitioner on this point and sustain the Commissioner in his application of the $2,000 limitation on capital losses provided by section 117 (d) of the Revenue Act of 1934.

*Issue (2)*.—This issue relates to a claimed deduction of $9,600 for attorney fees paid out by petitioner during the taxable year. The petitioner claimed it as the deduction of an ordinary and necessary business expense. The Commissioner disallowed it and explained his reasons for such disallowance in his deficiency notice, as follows:

Attorneys' fees paid in connection with obtaining a refund of income taxes due to the adjustment of distributable income from the Estate of S. B. Burnett, do not constitute an allowable deduction since the fees paid were not connected with any trade or business.

The distinction of what are purely personal expenses from those which are made in carrying on a trade or business is not always easy to draw. As was said in *Monell* v. *Helvering*, 70 Fed. (2d) 631:

The point where the one class of expenses (business) merges into the other (personal) is often hard to determine. But however blurred it may be, it is necessary to keep the distinction which Congress has made.

As we have already stated in our discussion under issue (1), petitioner was clearly carrying on the business of the purchase and sale, for her own account, of securities and commodities. But the expenditure of $9,600 for attorney fees was not in connection with this business of trading in securities and commodities. However, trading in securities and commodities was not petitioner's only business activity. She was a woman of considerable wealth. She

was one of the beneficiaries of the estate of S. B. Burnett and, while she was not one of the trustees of that estate, it was stipulated that:

The petitioner has, since its beginning in 1922, acted as consultant and adviser to the trustees [S. B. Burnett Estate] in the adoption of policies, purchase and sale of cattle, handling of the oil interests, and general oversight of the properties, having at June 30, 1925 a book value of $3,416,467.51.

It was also stipulated that:

Since the establishment of the Mary Couts Burnett Trust in 1923, the petitioner has continuously since its beginning, served as trustee. The properties of this trust had at June 30, 1925, a book value of $3,557,530.27.

The facts above referred to, taken together with other stipulated facts, convince us that the expenditure for attorney fees in question falls within the ambit of *Kales* v. *Commissioner*, 101 Fed. (2d) 35, and *Louise C. Slack et al., Executors*, 35 B. T. A. 271, and not within the ambit of *Elmon C. Gillette*, 29 B. T. A. 561, and *Monell* v. *Helvering, supra,* cited and urged by the Commissioner.

It should be remembered that the $9,600 attorney fees paid out by petitioner were not paid out in securing a refund of estate tax or income tax for the S. B. Burnett estate or the Mary Couts Burnett trust. If that had been true, the case would fall within the ambit of the *Gillette* case and the *Monell* case cited by the Commissioner. The fees were paid out in securing a refund of petitioner's own income taxes and the refund was due to an adjustment of petitioner's distributable income from the estate of S. B. Burnett, for which it has been stipulated that petitioner was acting "as consultant and adviser to the trustees in the adoption of policies, purchase and sale of cattle, handling of the oil interests and general oversight of the properties."

Under these circumstances we think issue (2) is ruled by *Kales* v. *Commissioner, supra,* and *Louise C. Slack et al., Executors, supra,* and we decide it in favor of the petitioner.

*Issue (3).*—This issue relates to $15,420 which petitioner claims as a deduction because of shares of stock which she owned in the First National Bank of Burkburnett becoming worthless in the taxable year. In his disallowance of this claimed loss, the Commissioner stated in his deficiency notice:

The loss on stock of the First National Bank of Burkburnett has been disallowed since the report states that the stock had a market value in 1936 and that dividends will likely be paid on liquidation.

It requires no citation of authority to support the view that the Commissioner's determination is presumed to be correct and that the burden is on petitioner to show that this determination was error. Petitioner has not made any such showing. In addition to facts showing the amount of petitioner's investment in the stock, the

only other facts stipulated are that "The doors of this bank were closed on March 18, 1933. No distribution in liquidation has ever been made to stockholders."

The year we have before us is 1934, the year following the closing of the bank in 1933. No facts are shown as to the assets and liabilities of the bank at the time of its closing in 1933, or at the end of the taxable year 1934, or at any other time. Apparently the affairs of the bank are still in liquidation, and on the meager facts which have been stipulated there is no way by which we can find that this stock became worthless in 1934. On this issue, petitioner must fail, for lack of evidence, to overcome the correctness of the determination of the Commissioner. Cf. *Northwest Bancorporation*, 32 B. T. A. 1218; affd., 88 Fed. (2d) 293.

*Decision will be entered under Rule 50.*