**FULD v. COMMISSIONER OF INTERNAL REVENUE, and three other cases.**

**Nos. 69, 70.**

Circuit Court of Appeals, Second Circuit.

Dec. 30, 1943.

O. R. Folsom-Jones, of Washington, D. C., for Leonard Felix Fuld and Florentine M. Fuld.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to the Atty. Gen., for Commissioner of Internal Revenue.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

Leonhard Felix Fuld petitions for review of a decision of the Tax Court involving income taxes of about $19,000 for the year 1933, and the Commissioner of Internal Revenue files his cross-petition involving income taxes for that year of about $8,000. Florentine M. Fuld also petitions for review of the decision of the Tax Court involving her income taxes for the same year of about $19,000, and the Commissioner files his cross-petition involving her income taxes for that year of about $9,000. The proceedings in the two appeals, and cross-appeals, have been consolidated for hearing on a single record pursuant to our order of March 30, 1942.

The taxpayers were brother and sister, each of whom was interested in investing in securities. Prior to October 9, 1930, they had purchased only for investment, and had no purpose of disposing of the securities in the course of trade or business but intended to hold them for an indefinite period. It was their belief that if investors acquired stocks in diversified companies which were leaders in a particular field and held those stocks over a sufficiently long period of time through successive business cycles, they would be able by the receipt of dividends from those stocks and from a long-term profit from them, to obtain a much larger return than would be possible by purchasing and holding investment bonds. Accordingly the taxpayers, prior to October 9, 1930, acquired primarily common stock, but also some preferred stock and bonds. Their only sales prior to October 9, 1930, were a few bonds, one 20 share lot of American Foreign Power Preferred stock and some scrip of fractional shares. Their principal source of income for livelihood prior to October 9, 1930, was interest and dividends on their securities. But in 1930 they changed their policy as to securities, because of their experience during and after the year 1929, and decided that they would pay as much attention to the sale of securities as they had in the past to purchasing them; in other words, they sought to obtain profits quickly rather than gradually over a long period of years, and, beginning October 9, 1930, they changed from a policy of investment to one of speculation by purchasing large lots ranging from 1,000 to 3,000 shares. In order to obtain funds to carry out this new policy of speculation they submitted to their brokers almost every week a list of their securities (acquired under their earlier investment policy) for the purpose of determining what was to be sold. To facilitate their new policy they began after October 9, 1930, and continued through 1933 to sell their old investments as fast as they could be disposed of with the exercise of reasonable discretion.

In their income tax returns for the year 1933 the taxpayers offset losses incurred that year through the sale of some of the securities which they had bought for investment prior to October 9, 1930 (and consequently had held for more than two years prior to sale), against profits realized in 1933 from sales of securities held for less than two years. They did this because they regarded all their securities after they had changed their policy on October 9, 1930, as primarily held for sale in the course of a trade or business and not as mere investments. The Commissioner, however, refused to allow the offsets on the ground that the losses resulted from the sale of capital assets and were, therefore, capital and not ordinary losses and, under Section 101 of the Revenue Act of 1932, 26 U.S. C.A. Int.Rev.Acts, page 504, were only deductible to the extent of 12½ per cent. The Tax Court decided that each taxpayer was engaged in business on and after October 9, 1930, but prior to that time was not engaged in business because the previous purchases of securities had been only for investment purposes. It accordingly held that the assets purchased prior to October 9, 1930, and sold in the year 1933, were capital assets held only for liquidation and not for sale in the course of trade or business, and that the losses in respect of such capital assets could not be off-set against the profits on sales of securities held for less than two years but could only be deducted to the extent of 12½ per cent. It, however, allowed losses on sales of securities purchased after October 9, 1930, to be off-set against profits on sales of such securities because they were not capital assets as defined by Section 101(c) (8) of the Revenue Act of 1932. The Commissioner appeals on the ground that neither taxpayer was at any time engaged in business, and consequently all profits and losses were subject to limitation. The taxpayers appeal on the ground that all sales made in 1933 were in the course of trade or business and hence

an off-set of the losses from sales of securities purchased prior to October 9, 1930, and held for more than two years should have been allowed. We think the Tax Court was right and should be affirmed upon both appeals.

The Tax Court made the following findings, based upon substantial evidence, as to the business activities of the taxpayers after their change of policy on October 9, 1930:

"From 1930 and during 1933 Leonhard Fuld devoted an average of eight hours per day to the study of new texts, reading services, charting prices of securities, conferring with his broker, attending meetings of corporations in which he owned securities, and consulting with corporate executives. Some of this work also assisted him in connection with the college course which he taught. He spent about one or two hours per day at the broker's office.

"Florentine Fuld had no trade or business other than buying and selling securities. In this connection she studied the services, read corporation annual reports, charted her own security prices, attended meetings of corporations in which she held securities, and consulted with corporate executives. It was her policy to buy and sell the same securities as Leonhard Fuld and in the same amounts, but in some instances she disagreed with him as to such purchases and sales. Her decisions in this connection were made independently of Leonhard's. She never visited the broker's office and had no direct conversations with the broker. Her orders were placed with the broker through Leonhard Fuld, who acted as agent only in the physical transmission of such orders and the acceptance of deliveries.

"The main source of livelihood of both petitioners was from their securities transactions. They maintained no business office, had no customers to whom they might sell securities, practically never sold securities short, and never advertised or held themselves out to the public as dealers. However, Leonhard Fuld was registered with the Securities Exchange Commission as a dealer and as an investment counselor and was listed in the stock directories throughout the United States. Also, he acted for some of his college students in the consummation of security transactions but received no compensation therefor. Neither of the petitioners was a director, officer, or employee of any of the companies in which they purchased securities in 1930 and thereafter.

\* \* \* \* \*

"Some of the securities held by petitioners for more than 2 years and sold in 1933 were acquired prior to the beginning of their new policy, October 9, 1930, and some of such securities were acquired subsequent to that date. In 1933, Leonhard Fuld made approximately 249 sales of securities held for more than 2 years and approximately 98 held for 2 years or less. Also, in the same year Florentine Fuld made approximately 229 sales of securities held for more than 2 years and approximately 89 held for 2 years or less. The sales of both petitioners ranged as high as 1,000 shares per transaction.

"Beginning October 9, 1930, through 1933, petitioners were engaged in the business of trading in securities. Securities purchased by petitioners before October 9, 1930, and sold in 1933 were not sold 'in the course of' that business. Those purchased after October 9, 1930, and sold in 1933 were sold 'in the course of' that business."

Upon the basis of the foregoing findings we must affirm the decision of the Tax Court unless it is clear as a matter of law that the taxpayers were not engaged in the business of trading in securities after October 9, 1930. The decision of the Tax Court may only be reviewed as to questions of law. 44 Stat. 110, § 1003(b), 26 U.S.C.A. Int.Rev.Code, § 1141(c) (1); Wilmington Trust Co. v. Helvering, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352. This statutory rule has just been construed by the Supreme Court in the opinion of Mr. Justice Jackson in Dobson v. Commissioner, 64 S.Ct. 239, 247, decided on December 20, 1943. He there discussed the functions of courts reviewing the Tax Court and remarked that when they "cannot separate the elements of a decision so as to identify a clear-cut mistake of law, the decision of the Tax Court must stand." The opinion of Mr. Justice Black in Commissioner v. Heininger, 64 S. Ct. 249, 254, likewise decided on December 20, 1943, is to the same effect. The question there was whether certain deductions had been properly allowed by the Tax Court as "ordinary and necessary" expenses of business. Justice Black emphasized the weight to be given to decisions of the Tax Court and said: "Except where a question of law is unmistakably involved a decision of the Board of Tax Appeals on these issues, having taken into account the pre-

sumption supporting the Commissioner's ruling, should not be reversed by the federal appellate courts. Careful adherence to this principle will result in a more orderly and uniform system of tax deductions in a field necessarily beset by innumerable complexities."

■ Under the statute and the above rulings we cannot say that the Tax Court was not justified in finding that securities purchased by the taxpayers before October 9, 1930, and sold in 1933, were not held "primarily for sale in the course * * * of trade or business" and therefore were "capital assets" as defined in Section 101(c) (8) of the Revenue Act of 1932.[1]

■ While the Tax Court held that some of the securities which had been purchased for investment prior to October 9, 1930, were sold by the taxpayers in 1933 in order that they might have on hand capital necessary to purchase securities in the course of their trade or business, it found that those prior purchases were held in the course of liquidating the investment activities and still remained a part of such activities. In support of the finding that the securities purchased prior to October 9, 1930, and sold in 1933, were not held by the taxpayers for sale in the course of their trade or business, it may reasonably be argued that those securities which they had purchased for investment were still held for about three years as investments and as a source of income and that when they were finally sold the sales were made either as a safeguard against danger of a further decline or in order to obtain funds with which to buy other securities for a quick turnover at a profit. The securities sold were not themselves available for or used in the speculative business in which the taxpayers became engaged. The inference to be drawn from the various transactions we have referred to was one of fact as to which the findings of the Tax Court that the securities were not held for sale in the course of business must prevail. Similar reasoning precludes us from supporting the Commissioner's contention that the taxpayer, Miss Florentine Fuld, was not engaged in business because she only spent some six hours a day in speculative activities as against more than that time on the part of her brother. But she had no other business and her speculative activities were very substantial both in time consumed and the amount and number of securities traded in. If the activities of either taxpayer were of the sort that would constitute a trade or business, the extent sufficient to bring them within the category of "capital assets" as defined in Section 101 (c) (8), supra, was a question for the Tax Court.

■ There only remains the contention of the Commissioner that the sales of securities purchased after the taxpayers changed their business policy in October, 1930, from one of investment to one of trading, as well as the sales of those purchased before that time, were sales of capital assets within the definition of Section 101(c) (8). In support of this contention it is argued that purchases and sales of securities by a speculator on his own account do not constitute a trade or business, even though the transactions be active and numerous, unless he holds himself out to others as "engaged in selling of goods or services." The argument is largely founded on the remarks of Mr. Justice Frankfurter in his concurring opinion in Deputy v. duPont, 308 U.S. 488, at page 499, 60 S.Ct. 363, at page 369, 84 L.Ed. 416. We think that those remarks do not apply to the present situation. In Deputy v. duPont it did not appear that the taxpayer was trading in securities. His transactions, though involving a large amount of stock, related to the deductibility of certain expenses incurred in borrowing stock for allotment to junior officers of the duPont Company in order to assist it in obtaining shares for those officers and also in order to promote his own interest in the Company. The transactions were not a business but one enterprise.

In the case at bar the taxpayers after October 9, 1930, were actively trading in securities rather than effectuating what amounted to a single deal. Moreover, it may fairly be said that persons engaged in speculating through brokers whether in

---

[1] "§ 101. Capital Net Gains and Losses
* * * * * *
"(c) Definitions. For the purposes of this title—
* * * * * *
"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business."

merchandise or in securities may equally hold themselves out as engaged in business. We so held in Winmill v. Commissioner, 2 Cir., 93 F.2d 494, and while that decision was reversed in Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52, the reversal was only on the ground that brokers' commissions in such a business were to be treated as part of the price of securities rather than as a current expense of the business. See, also, Neuberger v. Commissioner, 2 Cir., 104 F.2d 649, reversed on other grounds, 311 U.S. 83, 61 S.Ct. 97, 85 L.Ed. 58. The Supreme Court in Spreckels v. Commissioner, 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073, apparently assumed that a taxpayer buying and selling securities on his own account was engaged in a trade or business, though there again the critical question was whether the commissions paid a broker by one speculating on his own account were part of the cost of the securities or a business expense. See, also, Commissioner v. Purdy, 1 Cir., 102 F.2d 331.

In addition to the foregoing arguments in support of the conclusions of the tax court, there is the long administrative practice and interpretation of the act, elaborately discussed in the taxpayers' brief, and nowhere controverted by the Commisisoner, to the effect that persons who buy and sell securities on their own account are engaged in a trade or business. This construction is made still more evident by the amended definition of capital assets found in Section .117(b) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 707, which provided that: "For the purposes of this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade * * * of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

That this amendment was regarded by the Board of Tax Appeals as a new limitation on the type of property excepted from the definition of "capital assets" is evident from their decision in O. L. Burnett v. Commissioner, 40 B.T.A. 605, 607. The Conference Report dealing with this section of the 1934 Act said: "The Senate Amendment confines the exclusion to property held primarily for sale to customers in the ordinary course of the taxpayer's trade or

business, thus making it impossible to contend that a stock speculator trading on his own account is not subject to the provisions of Section 117." House Rept. 1385, 73rd Cong., 2d Sess., p. 22.

In view of the settled administrative practice we regard the amendment as not merely interpretative of existing law, but, as the Board held in O. L. Burnett, supra, a new limitation upon the exception in Section 101(c) (8) of the Act of 1932.

For the foregoing reasons the orders are affirmed.