C. FREDERICK AND PATRICIA B. FRICK, Petitioners v. COMMISSIONER OF INTERNAL, Respondent
Frick v. Commissioner
Docket Nos. 18651-81, 12716-82, 12717-82.
United States Tax Court
T.C. Memo 1985-542; 1985 Tax Ct. Memo LEXIS 90; 50 T.C.M. (CCH) 1334; T.C.M. (RIA) 85542; 6 Employee Benefits Cas. (BNA) 2536; October 28, 1985. *90 On their tax returns for 1976, 1977, and 1978, petitioners reported income and expenses (net losses each year) from an advertising business on schedule C, as well as interest, dividends, capital gains, and rents reported on schedules B, D, and E. Petitioner-husband made contributions under a "Keogh" plan. Petitioners made three trips in 1978. Held: (1) 1978 income tax--since petitioner-husband's only trade or business was the advertising business and it produced net losses, no deductions are allowed for Keogh plan contributions. Sec. 404(e)(1), I.R.C. 1954 (before TEFRA 1982). (2) 1978 income tax--no investor expense deductions are allowed for the three trips ( sec. 274(d), I.R.C. 1954) or for other claimed expenses (failure to substantiate). (3) 1977 and 1978 excise taxes--petitioner-husband is liable for 6-percent excise taxes on excess contributions to the Keogh plan. Sec. 4972, I.R.C. 1954 (before TEFRA 1982). C. Frederick Frick and Patricia B. Frick, pro se. Sheldon M. Kay, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal excise taxes under section 4972(a)[1], deficiencies in Federal individual *91 income taxes, and an addition to tax under section 6653(a) (negligence, etc.) against petitioners as follows: Addition to Tax
Docket No.
Type of Tax
Year
Deficiency
Sec. 6653(a)
18651-81
Excise [2]
1977
$879.00
12716
Excise *
1978
1,164.33
12717-82
Income
1978
[3] 3,355.12
[4] $167.76 At trial, the Court granted respondent's motions for leave to amend his answers to assert (1) increased deficiencies in excise taxes in docket numbers 18651-81 and 12716-82 and (2) an increase of $1,301.58 in the deficiency in income taxes in docket number 12717-82. These cases have been consolidated for trial, briefs, and opinion. After concessions by both sides, the issues for decision *92 [5] are as follows: (1) Whether petitioner-husband's investment activities constitute a trade or business, so that the profits from these activities may be taken into account in determining petitioner-husband's "earned income" for purposes of calculating the maximum permissible contributions under his "Keogh" plan for 1978. (2) Whether petitioners are entitled to deduct all or any part of their claimed "investor expenses" for 1978. (3) Whether petitioner-husband is liable for excise taxes (see n.2, supra) for 1976, 1977, and 1978 on account of excess contributions under his Keogh plan. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petitions were filed in the instant cases, petitioners C. Frederick Frick (hereinafter sometimes referred to as "Frick") and Patricia B. Frick, husband and wife, resided in Wauwatosa, Wisconsin. On the schedule Cs attached to their tax returns for 1976, 1977, and 1978, petitioners reported income and expenses *93 for an advertising activity, named Frick Service, as shown in table 1. Table 1 1976
1977
1978
Gross receipts
$600.00
$2,345.00
$1,688.85
Total income
$600.00
$2,345.00
$1,688.85
Auto expense
$3,782.45
$5,230.00
$5,686.35
Home office
800.50
861.00
1,170.00
Sublet expense
745.00
449.80
Permits
10.00
57.70
Total deductions
4,582.95
6,846.00
[6] 7,363.85
Net loss
$3,982.95
$4,501.00
* $5,675.00
Frick is the sole owner and employee of Frick Service. [7]
On the schedule Bs attached to their tax returns for 1976, 1977, and 1978, petitioners reported dividend and interest income in the total amounts and from the number of payors as shown in table 2. Table 2 Year
Dividends
Interest
Amount
Payors
Amount
Payors
1976
$1,579.68
20
$26,679.10
19
1977
1,861.37
22
27,759.66
19
1978
1,879.80
24
18,980.54
21
Of this interest income, 97 percent is allocable to Frick. [8] *94 The interest income shown in table 2 includes interest on a Continental Motel mortgage, which interest amounts to $4,816.58 for 1976, $4,767.59 for 1977, and $4,715.58 for 1978. Frick bought land in 1957 [9], built the motel on the land, and sold the motel and land. In 1978, Frick merely collected the payments on the mortgage. On the schedule D attached to their 1976 tax return, petitioners reported long-term capital gains aggregating $26,326.23 from two sales of lots (acquired in 1959) and a sale of stock (acquired in 1956). On the schedule D attached to their 1977 tax return, petitioners reported long-term capital gains aggregating $40,501. Of this amount, $101 appears to be from a trust. The remaining $40,400 is from two sales of lots (acquired in 1957). On the *95 schedule D attached to their 1978 tax return, petitioners reported a long-term capital gain of $653.80 from the sale of stock (acquired in 1968). All of this income is allocable to Frick. On the schedule Es attached to their tax returns for 1976, 1977, and 1978, petitioners reported rental income from commercial property located at 7131 West Capitol Drive (hereinafter sometimes referred to as "the rental property"). Petitioners report the rental property as having been acquired on "7-1-54". The amounts of rental income so reported are as follows: 1976--$11,514.28; 1977--$12,348.00; and 1978--$12,671.41. In 1978, there were three tenants in the rental property. Petitioners did not furnish any services to the tenants on a regular basis in 1978. Petitioners did not report any liability for self-employment tax for any of the years 1976, 1977, and 1978. Frick is the owner-employee participant in a tax-qualified employee plan (hereinafter sometimes referred to as "the Keogh Plan"). The Keogh Plan is not a defined benefit plan. Petitioners made contributions under the Keogh Plan in the amounts of $7,500 in 1976, $7,500 in 1977, and $5,000 in 1978. The Keogh Plan did not distribute *96 any money to petitioners. Petitioners' tax home in 1978 was in Wauwatosa, Wisconsin. Frick was away from home on a trip to Arizona from March 5 to March 19, 1978. Frick owned land in Tucson, Arizona, at that time, and an area usage plan was being proposed which might have affected his holding. Except for a short time when there was a squatter on it, Frick's land in Tucson was vacant in 1978. Frick did not earn any income from this land in 1978. Frick was away from home on a trip to South Carolina from May 23 to May 31, 1978. Frick understood that a computer firm wanted bank financing for software to be used in connection with the computer firm's hardware to be distributed through Radio Shack stores. Frick was away from home on a trip to Nevada and Arizona from November 6 to November 28, 1978. Frick understood that Southern California Edison was interested in negotiating for easements for lines carrying electrical energy from a new Palo Verde nuclear plant. * * * The only trade or business with respect to which the Keogh Plan was established is Frick Service--the activity, the income and the expenses of which are reported on the schedule Cs attached to petitioners' 1976, 1977, *97 and 1978 tax returns (see table 1, supra). OPINION I. Keogh Plan--Trade or Business
Under section 404(e)(1)[10] *98 , the maximum amount deductible for a year for contributions under the Keogh Plan for that year is the lesser of $7,500 or "15 percent of the earned income derived by such employee from the trade or business with respect to which the plan is established". (The $7,500 was raised to $15,000 for years beginning after 1981. The whole provision was revised for years beginning after 1983.) The only dispute between the parties is the amount of the relevant earned income to be used in determining the maximum deductible contribution to the Keogh Plan. Respondent maintains that the relevant trade or business is Frick Service, which produced a loss in 1978 (see table 1, supra). As a result, respondent contends, Frick's earned income from his trade or business for 1978 is zero, and the maximum amount deductible for contributions to the Keogh Plan for 1978 is zero. [11] *99 Petitioners maintain that Frick's earned income includes not only the income of Frick Service, but also the interest reported on schedule B, the gains on the sales of property reported on schedule D, and the rental income reported on schedule E; the sum of these items of income is asserted to be more than enough to support the deductibility of the entire contribution to the Keogh Plan. [12] *100 We agree with respondent. Whether a taxpayer is carrying on a trade or business requires an examination of all the facts in each case. Higgins v. Commissioner,312 U.S. 212, 217-218 (1941); Simonsen Industries Inc. v. Commissioner,243 F.2d 407 (CA7 1957). The Supreme Court has held that investing, in itself, does not constitute *101 a trade or business. See Whipple v. Commissioner,373 U.S. 193 (1963); Higgins v. Commissioner,supra.
In Higgins, the taxpayer had a large sum invested in real estate, bonds, and stock. He made permanent investments and hired a staff to help him oversee his fortune. The staff kept records, collected dividends and interest, made deposits, and reported to Higgins. After reviewing these facts, the Circuit Court of Appeals for the Second Circuit stated that "[b]y the common speech of men, a person who does nothing beyond looking after his own investments and receiving the income from them is not conducting a trade or business." Higgins v. Commissioner,111 F.2d 795, 796 (CA2 1940). In affirming the Second Circuit's opinion, the Supreme Court concluded that no matter what the size of an estate or the staff required to oversee it, the mere keeping of records and collecting investment income does not constitute a trade or business as a matter of law. In reaching its conclusion, the Supreme Court set forth a facts and circumstances test for determining what constitutes carrying on a trade or business and pointed out that no particular fact or set of facts was sufficient, by itself, to *102 satisfy that test. See also United States v. Pyne,313 U.S. 127 (1941), and City Bank Farmers Trust Co. v. Helvering,313 U.S. 121 (1941). Frick, like the taxpayer in Higgins, did nothing except collect interest and dividends earned on his savings accounts and his stock portfolio. The fact that he carried on these activities for his own account is not crucial to our determination; rather, it is the relatively passive nature of his activities that controls. See Ditunno v. Commissioner,80 T.C. 362 (1983). [13]
We conclude that Frick's schedule B interest income is not "earned income derived by [Frick] from the trade or business with respect to which the [Keogh Plan] is established." Sec. 404(e)(1). In Groetzinger v. Commissioner,82 T.C. 793 (1984), affd. 771 F.2d 269 (CA7 1985), we pointed out that an active "trader" might be treated as being in a trade or business. We summarized the state of the law as follows (82 T.C. at 801): It is now clear that an active "trader", who looks to profit from short-term market swings and does not simply hold securities for long-term appreciation, will be deemed *103 to be engaged in a trade or business provided that his trading is frequent and substantial. Fuld v. Commissioner,139 F.2d 465 (2d Cir. 1943); Commissioner v. Nubar,185 F.2d 584 (4th Cir. 1950); Levin v. United States,220 Ct. Cl. 197, 597 F.2d 760 (1979). Compare Purvis v. Commissioner,530 F.2d 1332 (9th Cir. 1976); Moller v. United States,721 F.2d 810 (Fed. Cir. 1983). We previously described this distinction between "investing" and "trading" as follows: "in the former, securities are purchased to be held for capital appreciation and income, usually without regard to short-term developments that would influence the price of securities on the daily market. In a trading account, securities are bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short-term basis. [Liang v. Commissioner,23 T.C. 1040, 1043 (1955).]" [Fn. ref. omitted.] The five or six capital transactions reported by petitioners on their tax returns over the 1976-1978 period do not qualify Frick as a trader. Nothing in the record suggests that the activities resulting in the gains reported on petitioners' schedule Ds--and reported as *104 long-term capital gains--arose from any activity that qualifies as a trade or business. We conclude that petitioners' schedule D long-term capital gains income is not "earned income derived by [Frick] from the trade or business with respect to which the [Keogh Plan] is established." Sec. 404(e)(1). The question of whether Frick's activities with regard to the rental property constitute a trade or business (see generally Curphey v. Commissioner,73 T.C. 766, 774-775 (1980)) is a question of fact, as to which petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice & Procedure. In particular, petitioners must show us the level and scope of Frick's activities with regard to the rental property and then they must persuade us that this level and scope of activities justify a conclusion that his activities amounted to a trade or business. O'Donnell v. Commissioner,62 T.C. 781, 785 (1974), affd. without published opinion 519 F.2d 1406 (CA7 1975). Petitioners did not present any evidence with regard to the rental property, other than the little that was elicited by respondent's cross examination of Frick and the Court's examination *105 of Frick. Essentially, it appears that Frick did not furnish any services to the tenants on a regular basis in 1978. Frick did not recall what the situation was in 1977 or 1976. We conclude that petitioners have failed to carry their burden of proving that their schedule E rental income is "earned income derived by [Frick] from the trade or business with respect to which the [Keogh Plan] is established". Sec. 404(e)(1). Since the relevant trade or business is only Frick Service (the business described on the schedule C attached to petitioners' tax return), and since that business produced a loss, we conclude that petitioners are not entitled to deduct any 1978 contributions to the Keogh Plan. On brief, petitioners state their position as follows: Again, it is the sincerest belief of the petitioner that the Keogh Plan was established with its goal to motivate the citizens of our country to put a percentage of their income aside for the purpose of keeping their independence in later years and not having to feel the need to ask for the support from others. It is with this intent the petitioner has made his contributions to his Keogh Plan. As stated in petitioners [sic] brief, petitioner *106 does not have a retirement plan or pension fund to look forward to. His Keogh Plan is it, and this petitioner has worked hard for it and is very proud of it. Petitioners persist in misunderstanding the law, notwithstanding the Court's efforts to explain the matter in chambers at the session when the instant cases were tried, and notwithstanding the explanation of this same point in Frick v. Commissioner,T.C. Memo. 1983-733, affd. by order (CA7 Aug. 20, 1985). As the Supreme Court put it in New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934), "Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." The Congress determined to allow deductions for contributions to Keogh plans, but the Congress also determined that any such deduction must "not exceed * * * 15 percent of the earned income derived by such employee from the trade or business with respect to which the plan is established" (sec. 404(e)(1)). Petitioners failed to qualify under the statute. Petitioners' "sincere belief" is irrelevant. On brief, petitioners point to a proceeding in an earlier case *107 before this Court ( Frick v. Commissioner,T.C. Memo. 1972-71) in which it was indicated that Frick was in a trade or business in 1966. That activity involved a joint venture between Frick and another person. On December 1, 1966, the joint venturors agreed that the joint venture would be dissolved and Frick's interest would be bought out by his co-venturor, effective April 12, 1967.This does not help petitioners show that Frick was in any trade or business in 1976,1977, or 1978.
We hold for respondent on this issue. [14]
II. Investor Expenses
Petitioners contend that they are entitled to deduct in full their claimed $2,490 of "investor *108 expenses". In particular, they maintain that they are entitled to deduct $2,150 as the expense of three trips undertaken in 1978. Petitioners calculated the $2,150 portion of the claimed investor expenses deduction by multiplying the aggregate number of trip days (43) by a flat per diem ($50). Respondent contends that (1) no deductions are allowable under section 162 because petitioners were not in any trade or business in connection with the expenses, (2) no deductions are allowable under section 212 because petitioners failed to show that the expenses were ordinary or necessary or bore a reasonable and proximate relation to the production of income or to the management of property held for the production of income, and (3) as to the travel expenses, petitioners failed to comply with the substantiation requirements of section 274(d). We agree with respondent's conclusion. We will consider first the $2,150 that petitioners seek to deduct as travel expenses, calculated as 43 days times $50 per day. Personal expenses are not deductible unless the contrary is "expressly provided" in chapter 1 (sec. 262). [15]Section 162(a)(2)[16] *110 expressly permits a taxpayer to deduct what might otherwise *109 be personal expenses if all the following requirements are met ( Commissioner v. Flowers,326 U.S. 465, 470 (1946)): (1) The expense is a traveling expense (this includes which items as transportation fares and food and lodging expenses incurred while traveling); (2) The expense is incurred while "away from home"; and (3) The expense is an ordinary and necessary expense incurred in pursuit of a trade or business. Under section 212, [17] an individual taxpayer may similarly deduct ordinary and necessary expenses with regard to property held for the production of income. Nevertheless, section 274(d)[18] *112 provides that no deduction shall be allowed under section 162 for any traveling expense, including meals and lodging while away from home, unless the taxpayer substantiates certain matters by adequate records or by sufficient evidence corroborating his own statement. Under section 1.274-5(c)(2), Income Tax Regs., in order to meet the "adequate records" requirement, a taxpayer is to maintain an account book, diary, statement of expense, or similar record and documentary evidence (such as receipts, paid bills, or similar evidence) which, when combined, establish each element of the expense set forth in section 274(d). If the taxpayer lacks adequate records, a detailed written or oral statement by the taxpayer and sufficient other corroborative *111 evidence is required. Sec. 1.274-5(c)(3), Income Tax Regs.
Section 274(d) was enacted in part with the specific intent of overruling the application of the "Cohan rule" ( Cohan v. Commissioner,39 F.2d 540 (CA2 1930)), under which courts had allowed deductions even in the absence of specific substantiation, where it appeared likely that the taxpayers had paid or incurred some deductible expenses. Sanford v. Commissioner,50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (CA2 1969). Petitioners failed to produce any evidence from which we could conclude that each of the requirements of section 274(d) (final flush language) was satisfied as to any specific expense. Under these circumstances, it is not necessary to examine into the details of sections 162(a) and 212. Petitioners have failed to describe the remaining $340 of deductions for "investor expenses" that they claim in addition to $2,150 of travel expenses. We conclude that petitioners have failed to carry their burden of proving their entitlement to any deductions for "investor expenses". We hold for respondent on this issue. III. Keogh Plan--Excess Contributions
Respondent determined that Frick made excess contributions under the Keogh Plan *113 as follows: $7,500 for 1976, $7,150 for 1977, and $4,755.33 for 1978. By amended answers respondent asserts that some greater amounts may be excess contributions for 1977 and for 1978. Petitioners contend that they did not make excess contributions for any of the three years. We agree with respondent. Section 4972(a)[19] *114 *115 *116 *117 imposes an excise tax in an amount equal to 6 percent of excess contributions under the Keogh Plan. Section 4972(b) defines "excess contributions", for purposes of the instant cases, as the excess of (1) the amounts contributed under the Keogh Plan for the current year and the prior years (back to 1976) over, (2) the amounts deductible for these years. In other words, the provision is cummulative. As applied to the instant cases, for 1977 the excess contributions include the 1976 and 1977 amounts, and for 1978 the excess contributions include the 1976, 1977, and 1978 amounts. See also Johnson v. Commissioner,74 T.C. 1057 (1980), affd. 661 F.2d 53 (CA5 1981). Frick contributed under the Keogh Plan $7,500 in 1976, $7,500 in 1977, and $5,000 in 1978. Petitioners' only meaningful contentions on this issue relate to the breadth of Frick's trade or business during 1976, 1977, and 1978. We have examined into these contentions as to 1978, the purposes of determining the amount of petitioners' 1978 income tax deficiency (Issue I, supra), and concluded that: (1) the only relevant trade or business is Frick Service; (2) Frick Service produced a loss for 1978; and (3) petitioners are not entitled to deduct any 1978 contributions. Nothing in the record in the instant case persuades us that the result is any different for 1977 or 1976. Accordingly, on the basis of the record in the instant cases, we conclude that the entire amount of the contributions made for each of the years constitutes excess contributions and that petitioner-husband is liable for the 6-percent excise taxes thereon under section 4972. [20] *118 We hold for respondent on this issue. To take into account the parties' settlement of numerous issues in docket number 12717-82, as well as the matters referred to in note 14, supra,
Decisions will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the years in issue. ↩
2. The parties have stipulated that petitioner Patricia B. Frick is not liable for these excise taxes. See Johnson v. Commissioner,74 T.C. 1057, 1062 (1980), affd. 661 F.2d 53↩ (CA5 1981). *. See footnote 2.↩
3. Of this amount, self-employment taxes under chapter 2 are $132.12; the remainder is chapter 1 income tax. ↩
4. Respondent has conceded the addition to tax under section 6653(a). ↩
5. The amount of the medical expense deduction is derivative and depends on settled issues and on our resolution of one of the issues in dispute.↩
6. The parties agree that petitioners' allowable 1978 schedule C deductions total $6,238.05 ($5,017.55 for auto expense, $713 for home office, $449.80 for sublet expense, and $57.70 for permits). As a result, petitioners' 1978 schedule C loss is $4,549.20. ↩
*. See footnote 6.↩
7. So stipulated. However, the 1976 and 1978 tax returns show both petitioners as owners.↩
8. So stipulated. However, the 1977 tax return shows all of this income as joint.
9. So Frick testified at the trial. On answering brief, petitioners state that Frick bought the land in 1956, and they make numerous other statements about the Continental Motel. Mere statements on brief do not constitute evidence. Evans v. Commissioner,48 T.C. 704, 709 (1967), affd. per curiam 413 F.2d 1047 (CA9 1969); Rule 143(b), Tax Court Rules of Practice & Procedure.↩
10. Section 404(e)(1) provides, in relevant part, as follows: SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. * * * (e) Special Limitations for Self-Employed Individuals.-- (1) In General.--In the case of a plan included in subsection (a)(1), (2), or (3), which provides contributions or benefits for employees, some or all of whom are employees within the meaning of section 401(c)(1), the amounts deductible under subsection (a) in any taxable year with respect to contributions on behalf of any employee within the meaning of section 401(c)(1) shall, subject to paragraphs (2) and (4), not exceed $7,500, or 15 percent of the earned income derived by such employee from the trade or business with respect to which the plan is established, whichever is the lesser. [The subsequent amendments of this provision, by sec. 312(a) of the Economic Recovery Tax Act of 1981 (Pub. L. 97-34, 95 Stat. 172, 283) and sec. 238(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. 97-248, 96 Stat. 324, 512) do not affect the instant cases.]↩
11. In the notice of deficiency, respondent disallowed substantially all of the schedule C deductions, resulting in a schedule C gain of $1,631.15. Accordingly, respondent determined that a deduction of $244.67 was allowable for contributions to the Keogh Plan. Because of the parties' agreements as to schedule C adjustments (see n.6, supra↩), petitioners are entitled to a schedule C net loss of $4,549.20. As a result, if "the trade or business with respect to which the plan is established" is only the one reported on petitioners' schedule C then Frick did not have any earned income therefrom for 1978 and no 1978 deduction is allowable for contributions to the Keogh Plan.
12. The parties stipulated that "It is the petitioners' position that earned income includes the income from the advertising business (Schedule C of the Federal income tax returns (Joint Exhibit 4-D, 5-E and 6-F)) and investments which include interest and dividends as reported on Schedule B of the federal income tax returns for 1976, 1977 and 1978. (Joint Exhibits 4-D, 5-E and 6-F)". In chambers, the Court pointed out to the parties that, for 1978, petitioners' position meant that the total "earned income * * * from the trade or business with respect to which the plan is established" (sec. 404(e)(1)) would be no more than $16,311.14 (interest and dividends as shown in table 2, supra, less the agreed-upon schedule C loss (n.6, supra)). Under petitioners' stipulated position, the maximum allowable deduction for 1978 contributions to the Keogh Plan would be 15 percent of this earned income, or no more than $2,446.67, which is less than one-half of the amount petitioners deducted for 1978. At trial, petitioners claimed that the 15-percent limit applied to the "net income profits which he [Frick] has derived from his investment business." On brief, petitioners take the expanded position described in the text, dropping the dividends but adding the capital gains and rental income.↩
13. See Frick v. Commissioner,T.C. Memo. 1983-733↩, affd. by order (CA7, Aug. 20, 1985).
14. In the notice of deficiency, respondent determined that Frick Service produced $1,631.15 profit, which resulted in (1) allowance of a $244.67 deduction for the contribution to the Keogh Plan and (2) imposition of $132.12 in self-employment taxes. As a result of our determination that Frick Service produced a loss and Frick did not have any other trade or business, (1) no deduction is allowable for the contribution to the Keogh Plan, and (2) petitioners do not have self-employment income and so do not have a liability for self-employment taxes.↩
15. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
16. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including--* * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * 17. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax.↩
18. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. * * * (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any items with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.
19. Section 4972 provides, in relevant part, as follows: SEC. 4972. TAX ON EXCESS CONTRIBUTIONS FOR SELF-EMPLOYED INDIVIDUALS. (a) Tax Imposed.--In the case of a plan which provides contributions or benefits for employees some or all of whom are employees within the meaning of section 401(c)(1), there is imposed, for each taxable year of the employer who maintains such plan, a tax in an amount equal to 6 percent of the amount of the excess contributions under the plan (determined as of the close of the taxable year). The tax imposed by this subsection shall be paid by the employer who maintains the plan. * * * (b) Excess Contributions.-- (1) In General.--For purposes of this section, the term "excess contributions" means the sum of the amounts (if any) determined under paragraphs (2), (3), and (4), reduced by the sum of the correcting distributions (as defined in paragraph (5)) made in all prior taxable years beginning after December 31, 1975. * * * (2) Contributions by Owner-Employees.--The amount determined under this paragraph, in the case of a plan which provides contributions or benefits for employees some or all of whom are owner-employees (within the meaning of section 401(c)(3)), is the sum of-- (A) the excess (if any) of-- (i) the amount contributed under the plan by each owner-employee (as an employee) for the taxable year, over (ii) the amount permitted to be contributed by each owner-employee (as an employee) for such year, and (B) the amount determined under this paragraph for the preceding taxable year of the employer, reduced by the excess (if any) of the amount described in subparagraph (A)(ii) over the amount described in subparagraph (A)(i). (3) Defined Benefit Plans.--* * * (4) Defined Contribution Plans.--The amount determined under this paragraph, in the case of a plan other than a defined benefit plan, is the portion of the amounts contributed under the plan by the employer during the taxable year and each prior taxable year beginning after December 31, 1975, which has not been deductible for the taxable year or any prior taxable year. (5) Correcting Distribution.--For purposes of this subsection the term "correcting distribution" means-- (A) in the case of a contribution made by an owner-employee as an employee, regardless of the type of plan, the amount determined under paragraph (2) distributed to the owner-employee who contributed such amount, (B) in the case of a defined benefit plan, the amount determined under paragraph (3) which is distributed from the plan to the employer, and (C) in the case of a defined contribution plan, the amount determined under paragraph (4) which is distributed from the plan to the employer or to the employee to the account of whom the amount described was contributed. (c) Amount Permitted To Be Contributed by Owner-Employee.--For purposes of subsection (b)(2), the amount permitted to be contributed under a plan by an owner-employee (as an employee) for any taxable year is the smallest of the following: (1) $2,500, (2) 10 percent of the earned income (as defined in section 401(c)(2) for such taxable year derived by such owner-employee from the trade or business with respect to which the plan is established, or (3) the amount of the contribution which would be contributed by the owner-employee (as an employee) if such contribution were made at the rate of contributions permitted to be made by employees other than owner-employees. In any case in which there are no employees other than owner-employees, the amount determined under the preceding sentence shall be zero. [The subsequent repeal of sec. 4972 (by sec. 237(c)(1) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 511) applies to years beginning after December 31, 1983 (Pub. L. 97-248, sec. 241(a), 96 Stat. 520), and so does not affect the instant cases.]
20. We note that petitioners' income tax liability for 1977 was determined by this Court in Frick v. Commissioner,T.C. Memo. 1983-733, affd. by order (CA7, Aug. 20, 1985), and that one of the matters disputed in that case was the amount of the deduction allowable for 1977 contributions under the Keogh Plan. We direct that, in the Rule 155 computation herein, and parties are to take into account the amount, if any, determined in T.C. Memo. 1983-733↩ as the deduction allowable for 1977 contributions under the Keogh Plan.